EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Tomás Medina Garay y Rogelio Medina Garay<br><br>    Demandantes-Recurridos<br><br>v.<br><br>Gladys Luz Medina Garay, et als.<br><br>    Demandados-Peticionarios | Certiorari<br><br>2004 TSPR 75<br><br>161 DPR \_\_\_\_ |

Número del Caso: CC-2002-655

Fecha: 19 de mayo de 2004

Tribunal de Circuito de Apelaciones:

Circuito Regional VI

Juez Ponente:

Hon. Frank Rodríguez García

Abogado de la Parte Peticionaria:

Lcdo. Jorge Calero Blanco

Abogado de la Parte Recurrida:

Lcdo. Gustavo A. Quiñones Pinto

Oficina del Procurador General:

Lcda. Sylvia Roger Stefani
Procuradora General Auxiliar

Materia: Acción Civil, Partición de Herencia y Nulidad de
        Compraventa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Tomás Medina Garay y
Rogelio Medina Garay

    Demandantes-recurridos

       vs.                              CC-2002-655    CERTIORARI

Gladys Luz Medina Garay, Et Als.

    Demandados-peticionarios

    OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

San Juan, Puerto Rico a 19 de mayo de 2004

El 16 de octubre de 1972, Don Juan Tomás Medina y su esposa Doña Gloria Garay, vendieron a su hija, Doña Carmen Lidia Medina Garay, dos parcelas de terreno (denominadas como "A" y "B"), por una cantidad total de $5,000. En ese momento la señora Carmen L. Medina Garay se encontraba casada con el señor Miguel Ángel Ortiz. Luego de la mencionada venta, el matrimonio Ortiz-Medina presentó una solicitud de expediente de dominio ante el Tribunal de Primera Instancia, Sala Superior de Humacao, para acreditar a su favor el dominio sobre las parcelas "A" y "B". La referida solicitud fue declarada "con lugar" mediante resolución de fecha 26 de julio de 1974, ordenándose así que dichas parcelas fueran

inscritas en el Registro de la Propiedad de Puerto Rico, Sección de Humacao, a favor del matrimonio peticionario Ortiz Medina.[1]

Don Juan Tomás Medina y su esposa doña Gloria Garay fallecieron.[2] Mediante resolución, sobre declaratoria de herederos, emitida por el tribunal de instancia, fueron declarados <u>herederos</u> de éstos las siguientes personas: Tomás, Rogelio, Gladys Luz, Carmen Lidia <u>y Noemí</u>, todos de apellidos <u>Medina Garay</u>, así como los nietos de los causantes, Domingo y Reina Medina Vidal, quienes figuran como herederos en representación del hijo premuerto Domingo

---

[1] La parcela denominada como "A" está compuesta de noventa (90) centavos de cuerda, radicada en el Barrio Cabezas de Fajardo donde enclavaba, en aquel momento, una casa de madera. Dicha parcela fue inscrita el 18 de septiembre de 1974 en el Registro de la Propiedad de Puerto Rico, Sección de Fajardo, bajo la primera inscripción de la finca 8,060, al Folio 280, del Tomo 216 de Fajardo. La misma parcela "A" fue inscrita nuevamente en el mismo Registro de la Propiedad de Puerto Rico, Sección de Fajardo, el 20 de julio de 1988, como la finca 14,278, inscrita al Folio 1, del Tomo 333.

Por su parte, la parcela denominada "B" está compuesta de doce (12) centavos de cuerda, radicada en el Barrio Cabezas de Fajardo donde enclavaba, en aquel momento, una casa de concreto y hormigón. La misma fue inscrita en el Registro de la Propiedad de Puerto Rico, Sección de Fajardo, al Folio 285 del Tomo 216, mediante primera inscripción de la finca 8,061, efectuada el 18 de septiembre de 1974. Esta misma parcela fue inscrita por segunda vez en el mismo Registro de la Propiedad, Sección de Fajardo, el 20 de julio de 1988, al Folio 6 del Tomo 333, finca 14,279. De los autos del caso no se desprende la razón de la doble inscripción de ambas fincas.

En la parcela "B" enclavada una estructura de concreto y hormigón, la cual era poseída por la señora Gladys Luz Medina Garay y su esposo Isaías García Estrada.

[2] Del expediente del caso surge que la señora Gloria Garay y el señor Juan Tomás Garay fallecieron el 1ro de junio de 1980 y el 27 de noviembre de 1984, respectivamente.

Medina Garay, y a Ruth Lillian y Daisy Luz Medina Díaz, en representación del también hijo fallecido Severino Medina Garay.[3]

El 1 de mayo de 1992, mediante la Escritura de Compraventa Número Veintinueve (29), otorgada ante el notario Juan Antonio Aquino Barrera, el señor Miguel Ángel Ortiz y la señora Carmen Lidia Medina Garay, vendieron a El Conquistador Partnership, L.P. --en adelante "El Conquistador"--, la parcela "B" por la cantidad de $45,000.00. Además, en esa misma fecha la señora Gladys Luz Medina Garay y su esposo Isaías García Estrada otorgaron un acuerdo con El Conquistador donde los primeros cedieron al segundo cualquier derecho que éstos tuviesen sobre la estructura enclavada en la parcela "B", la cual poseían en aquel momento. El precio de este último acuerdo fue de $26,000.00.

Así las cosas, el 23 de junio de 1992, los señores Tomás Medina Garay y Rogelio Medina Garay presentaron demanda ante el Tribunal de Primera Instancia, Sala Superior de Humacao, contra Carmen Lidia Medina Garay, Miguel Ángel Ortiz, la sociedad legal de gananciales compuesta por ambos, Gladys Luz Medina Garay, Noemí Medina Garay, Domingo Medina Vidal, Reina Medina Vidal, Ruth Lillian Medina, Daisy Luz Medina, El Conquistador y Kumagai Caribbean, Inc. Alegaron, en síntesis, que la venta llevada a cabo entre los co-demandados Carmen Lidia Medina, Miguel

---

[3] La resolución sobre declaratoria de herederos se emitió el 28 de mayo de 1995.

Ángel Ortiz y los causantes de la sucesión Medina-Garay --el matrimonio compuesto por don Juan Tomás Medina y doña Gloria Garay-- era nulo e inexistente, ello por ausencia de causa. Arguyeron, además, que dichos co-demandados vendieron la parcela "B" a El Conquistador, sin consultar ni pagar ninguna partida a los demandantes-recurridos, quienes tenían derecho a una cantidad por ser parte de la sucesión Medina-Garay.

Al tratar de diligenciar los correspondientes emplazamientos, los demandantes no pudieron localizar a una de las co-demandadas nombrada como tal en la demanda original, la señora Noemí Medina Garay, a los fines de ser emplazada personalmente. Por tal razón --luego de evaluar la declaración jurada sometida por los demandantes a esos efectos-- el Tribunal de Primera Instancia ordenó, el 29 de julio de 1992, que se emplazara a dicha persona mediante edictos conforme las disposiciones de la Regla 4.5 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 4.5. La referida orden dispuso, en síntesis, que:

> La publicación de tal edicto se hará en un periódico de circulación diaria general en la Isla de Puerto Rico, una sola vez, y dentro de diez (10) días siguientes a la publicación de dicho edicto, se le dirigirá a la co-demandada por correo certificado con acuse de recibo, una copia del emplazamiento y de la demanda presentada al lugar de su última dirección. Transcurridos treinta (30) días de haberse publicado el edicto, sin que las personas notificadas comparecieren, según lo dispone la Regla 10.1 de las de Procedimiento Civil, el caso seguirá su trámite. (énfasis suplido).

El 13 de julio de 1994, esto es, a dos (2) años de emitida esta orden, se publicó el emplazamiento por edictos en el periódico El Vocero de Puerto Rico. De los autos del caso no surge que la parte demandante haya solicitado prórroga para diligenciar el emplazamiento. Copia del emplazamiento y la demanda fueron enviados a la última dirección conocida de la co-demandada Noemí Medina Garay mediante correo certificado. Del sobre donde se enviaron dichos documentos a co-demandada Noemí Medina Garay surge como fecha de envío el 13 de noviembre de 1996. De los autos del caso no se desprende la razón para la dilación de más de dos (2) años desde la publicación del edicto para enviar por correo certificado copia de la demanda y el emplazamiento.

Ello no obstante, el 24 de febrero de 1997, la parte demandante solicitó ante el foro primario que se le anotara la rebeldía a la parte co-demandada Noemí Medina Garay. El tribunal de instancia no tomó acción alguna con referencia a dicha solicitud; tampoco se dictó sentencia en rebeldía en contra esta co-demandada. Resulta importante señalar que la señora Noemí Medina Garay nunca compareció ante el tribunal de instancia ni se le notificó de los escritos sometidos ante el foro primario durante la vigencia de este litigio.[4]

---

[4] Cabe señalar que el tribunal de instancia anotó la rebeldía de otros co-demandados y así dictó sentencia en rebeldía contra éstos.

Así las cosas y luego de los trámites de rigor, el tribunal de instancia celebró la vista en su fondo y dictó sentencia el 31 de marzo de 2000, archivando en autos copia de la notificación el día 3 de abril de 2000.[5] Mediante dicha sentencia el foro primario resolvió, en síntesis, que el contrato de compraventa suscrito entre el matrimonio Ortiz-Medina y los fenecidos Gloria Garay y Tomás Medina carecía de causa y, por lo tanto, era nulo e inexistente. Decretó, además, que El Conquistador no gozaba de la protección de la fe pública registral, ello debido a la doble inmatriculación de la parcela adquirida. En cuanto a los demás miembros de la sucesión, el tribunal de instancia concluyó que tanto la parcela "A" como el valor de la parcela "B" y el valor de la estructura antes localizada en esta última, la cual fue demolida por razón de una construcción realizada posteriormente por el Estado Libre Asociado de Puerto Rico, correspondía por partes iguales a los demandantes y demandados pertenecientes a la sucesión Medina-Garay. Por tal razón, ordenó que la finca "A" revirtiera a la sucesión para ser dividida entre los herederos y determinó que El Conquistador y el matrimonio Ortiz-Garay respondían solidariamente por el pago del valor de la finca "B" y la estructura demolida, ello en vista de que dicha parcela había sido cedida por El Conquistador a un tercero.

---

[5] Esta notificación fue reemplazada por la notificación enmendada de 24 de abril de 2000.

Inconforme con este proceder, El Conquistador acudió oportunamente ante el entonces Tribunal de Circuito de Apelaciones mediante recurso de apelación. En síntesis, argumentó que la acción de los demandantes había prescrito bajo el Artículo 1857 del Código Civil. Arguyó, además, que incidió el foro primario al concluir que la Escritura de Compraventa suscrita entre los co-demandados Ortiz-Medina y los causantes de la sucesión Medina-Garay era nula e inexistente y, también, al decretar que El Conquistador no era un tercero registral.

Así las cosas, el 31 de octubre de 2000, la parte demandante-recurrida presentó una moción de desestimación ante el foro apelativo intermedio. Arguyó, en síntesis y en lo aquí pertinente, que la parte apelante, El Conquistador, omitió notificar su escrito de apelación a la co-demandada Noemí Medina Garay dentro del término jurisdiccional para presentar dicho escrito, por lo que el tribunal apelativo intermedio carecía de jurisdicción para atender el recurso. El Conquistador se opuso a dicha moción, arguyendo que no notificó a Noemí Medina Garay toda vez que ésta no era "parte" en el litigio; basó su argumento en que diversas irregularidades en el emplazamiento de la señora Noemí Medina Garay impidieron que el foro primario adquiriese jurisdicción sobre su persona y, en consecuencia, que pudiese considerarse como "parte" para fines de notificación del escrito en cuestión.

Acogiendo los planteamientos de la parte demandante, el foro apelativo intermedio emitió resolución en la cual desestimó el recurso.[6] En síntesis, el referido foro sostuvo que no se notificó el recurso de apelación presentado por El Conquistador a una de las "partes" en el litigio, la señora Noemí Medina Garay, dentro del término jurisdiccional para presentar el referido recurso. Por tal razón, dicho foro se decretó sin jurisdicción. La parte aquí peticionaria solicitó reconsideración la cual fue declarada "no ha lugar".[7]

Insatisfecho, El Conquistador acudió ante nos --vía *certiorari*-- imputándole al Tribunal de Apelaciones haber errado al "resolver que carecía de jurisdicción para entender en el recurso de apelación presentado por El Conquistador."

Expedimos el recurso. Contando con las comparecencias de ambas partes, y estando en posición de resolver el mismo, procedemos a así hacerlo.

I

Sabido es que el recurso apropiado para revisar una "sentencia final" emitida por el Tribunal de Primera

---

[6] Resolución emitida el 29 de mayo de 2002 y notificada el 5 de junio de 2002.

[7] Ello mediante resolución fechada 25 de junio de 2002 y notificada 27 de junio de 2002.

Instancia es el de apelación.[8] Es harto conocido que el término para presentar el referido recurso es uno jurisdiccional.[9] Asimismo, la Regla 53.2 (d) de las de Procedimiento Civil, según enmendada por la Ley Núm. 249 de 25 de diciembre de 1995, 32 L.P.R.A. Ap. III, R. 53.2 (d), y la Regla 13 (B) del anterior Reglamento del Tribunal de Circuito de Apelaciones (ahora Tribunal de Apelaciones), 4 L.P.R.A. Ap. XXII-A, R. 13 (B), disponen para la notificación a todas las partes, o sus abogados de record, del recurso de apelación incoado ante el Tribunal de Apelaciones, dentro del término jurisdiccional para presentar el mismo.

A tono con lo anterior, este Tribunal ha sido enfático al resolver que la notificación a las partes, o sus abogados, es un requisito jurisdiccional, ello si se trata de un recurso que debe ser presentado dentro de un plazo clasificado como jurisdiccional y la ley o reglas procesales disponen que dicho recurso debe notificarse

---

[8] La Ley de la Judicatura de 1994, 4 L.P.R.A sec. 22k (a), fue derogada mediante la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201 de 22 de agosto de 2003. El Artículo 4.006 de la Ley vigente, al igual que la derogada, confiere la competencia al Tribunal de Apelaciones para conocer del recurso de apelación de toda sentencia final dictada por el Tribunal de Primera Instancia.

[9] Regla 13 (B) del anterior Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A, R. 13. Véase además: Regla 13 (A) y (B) del Reglamento Transitorio del Tribunal de Apelaciones, Ley Núm. 201 de 22 de agosto de 2003.

dentro del referido periodo.[10] En consecuencia, son dos (2) los requisitos jurisdiccionales en la presentación de recursos de apelación --ante el Tribunal de Apelaciones-- de sentencias finales dictadas en casos civiles provenientes del Tribunal de Primera Instancia, a saber: (i) el término para presentar el recurso y (ii) la notificación del recurso a las demás partes dentro del mismo plazo.[11]

Ello no obstante, las referidas piezas legislativas no definen ni establecen con precisión el concepto "parte". Es por ello que en Acosta v. A.B.C., Inc., 142 D.P.R. 927 (1997), establecimos que dichas disposiciones de ley parten de la premisa de que los dictámenes que revisa un tribunal apelativo, de ordinario, son el resultado de una contienda entre personas sobre las cuales el tribunal adquirió jurisdicción. Esto es, el concepto "parte" va enlazado al de jurisdicción sobre la persona.[12]

---

[10] Colón Morales v. Rivera Morales, 146 D.P.R. 930 (1998). Véase: Hiram A. Sánchez Martínez, Práctica Jurídica de Puerto Rico, Derecho Procesal Apelativo, Puerto Rico, Lexis-Nexis de Puerto Rico, Inc., 2001, pág. 185.

[11] Véase: Méndez v. Corp. Quintas San Luis, 127 D.P.R. 635 (1991); González Santos v. Bourns P.R., Inc., 125 D.P.R. 48, 57 (1989); Hiram A. Sánchez Martínez, Práctica Jurídica de Puerto Rico, Derecho Procesal Apelativo, ante, a la pág. 185-86. Véase además: Regla 13 (A) y (B) del Reglamento Transitorio del Tribunal de Apelaciones, Ley Núm. 201 de 22 de agosto de 2003.

[12] Sobre este particular, el importante concepto de "parte" ha sido definido en la jurisdicción norteamericana de la siguiente forma: "[a] person who is named as a party to an action and subjected to the jurisdiction of the court is a party to the action." Véase: Restatement (Second) of Judgment, sec. 34 (1982). Véase, además: Mitchell v.

Similarmente, en la esfera civilista el término "parte" va atado a que la persona haya sido notificada del litigio. A esos efectos, el Tribunal Supremo de España ha entendido que "parte" es aquél a quien propiamente se le ha dado aviso del procedimiento en su contra. A esos efectos dicho tribunal estableció lo siguiente:

> si por providencia de 23 de Nov. 1983 fue tenida por personada, entendiéndose con ella las posteriores actuaciones, en realidad se le proveyó del carácter de parte en los mencionados autos a partir de entonces dado que en el ámbito procesal tener por personado a un demandado que es llamado a juicio significa proveerle de la consideración de parte, ya que lo contrario conduciría al absurdo de dar intervención a una persona en el proceso sin depararle posibilidad de actuación en él. Si ciertamente en la falta por completo el concepto de parte y tampoco es fácil inducirlo de las normas particulares que emplean con frecuencia este término o el de litigante, sin embargo, cabe entender que su consideración viene determinada o configurada, bien por la persona que pide o bien por la persona frente a quien se pide del órgano jurisdiccional la actuación de una pretensión, y, por tanto, si el acto de comparecencia viene producido por la actividad inicial de un sujeto por el cual éste figura jurídicamente en un proceso, se puede hablar de la comparecencia como un derecho a presentarse y a actuar en un proceso, que es precisamente lo que configura el carácter de parte, una vez producida la llamada al susodicho procedimiento". (STS 9 Jun. 1986; RAJ 3301). Véase además: Miguel Ángel Fernández, José María Rifa, José Francisco Valls, Derecho Procesal Práctico, Volumen I, Madrid, Editorial Centro de Estudios Ramón Areces, S.A., 1998, págs. 541-542.

Lo anteriormente expuesto es cónsono con la norma ampliamente conocida de que los tribunales debemos ser celosos guardianes del ejercicio de nuestra jurisdicción y

_____

Banking Corp. Of Montana, 81 Mont. 459, 264 P. 127 (1928); Bennet v. Bird, 237 App. Div. 542, 261 N.Y.S. 540 (1933); Cf. Behar v. Savard, 21 F.R.D. 367 (S.D.N.Y. 1958).

que para poder ejercitar válidamente dicha autoridad, debemos poseer jurisdicción sobre la materia y sobre las personas envueltas en el litigio. Julia Padró v. Epifanio Vidal, res. el 14 de febrero de 2001, 2001 TSPR 15; Shuler v. Shuler, res. el 19 de agosto de 2002, 2002 TSPR 109.

En ocasión de expresarnos sobre el tema de la jurisdicción *in personam,* hemos establecido la norma de que cada estado posee jurisdicción sobre los demandados, siempre y cuando éstos estén domiciliados en el mismo o que se encuentren dentro de sus límites territoriales.[13] Pesquero v. Hernández Pellot, 139 D.P.R. 487 (1995); Shuler v. Shuler, ante. Véase, además: Pennoyer v. Neff, 95 U.S. 714 (1877).

No obstante lo anterior, la regla general sobre jurisdicción *in personam* tiene sus excepciones. En caso de configurarse una de estas excepciones, los tribunales pueden ejercer jurisdicción sobre la persona de un demandado no domiciliado, esto es, ausente de los límites territoriales. Shuler v. Shuler, ante; Ind. Siduedúrgica v. Thyessen, 114 D.P.R. 548 (1983).

Asimismo, aquella parte que comparece voluntariamente, y realiza algún acto sustancial que la constituya parte en el pleito, se somete a la jurisdicción del tribunal. Shuler

[13] Ello va acorde con la cláusula del debido proceso de ley de la Constitución de los Estados Unidos y la de Puerto Rico, las cuales limitan la autoridad y el poder de los tribunales para asumir jurisdicción y dictar sentencias contra personas o entidades que no residen dentro de su territorio. Véase: Shuler v. Shuler, ante; Véase, además: Intl. Shoe Co. V. Washington, 326 U.S. 310, 316 (1945); Kulko v. California Superior Court, 436 U.S. 84 (1978).

v. Shuler, ante; Qume Caribe Inc. V. Sec. Hacienda, res. el 30 de marzo de 2001, 2001 TSPR 38; Márquez Resto v. Barreto, 143 D.P.R. 128 (1997).

Ahora bien, cualquiera que sea la base que el tribunal tenga para adquirir jurisdicción sobre una persona, no hay duda de que el emplazamiento es el mecanismo procesal mediante el cual se le notifica al demandado que existe un procedimiento judicial en su contra y por medio de éste, el tribunal adquiere jurisdicción sobre dicha persona. Rivera Báez v. Jaume Andujar, res. el 28 de junio de 2002, 2002 TSPR 100; First Bank of P.R. v. Inmob. Nac., Inc., 144 D.P.R. 901 (1998); Acosta v. A.B.C., Inc., ante. De esta forma, hemos señalado que la falta del diligenciamiento del emplazamiento (personal o por edictos) priva de jurisdicción sobre la persona al tribunal ya que es en ese momento que se adquiere jurisdicción sobre ésta. Rivera Báez v. Jaume Andujar, ante; Acosta v. A.B.C., Inc., ante, a la pág. 931. En fin, el emplazamiento es el primer paso para salvaguardar el debido proceso de ley. Acosta v. A.B.C., Inc., ante, a la pág. 931; Reyes Reyes v. Oriental Fed. Savs. Bank, 133 D.P.R. 15 (1993).

Cónsono con lo anterior, hemos reiterado en diversas ocasiones que, como norma general, es necesario un cumplimiento estricto con los requisitos exigidos para el emplazamiento. Chase Manhattan Bank, N.A. v. Polanco Martínez, 131 D.P.R. 530, 535 (1992) (citando a Rodríguez v. Nasrallah, 118 D.P.R. 93, 98 (1986)). Lo anterior cobra

todavía más importancia cuando se está ante un emplazamiento por edictos en sustitución de la notificación personal, <u>el cual requiere un cumplimiento riguroso, fiel y estricto</u>. Véase: <u>Reyes v. Oriental Fed. Savs. Bank</u>, 133 D.P.R. 15, 21 (1993), <u>Márquez Resto v. Barreto</u>, 143 D.P.R. 137, 143 (1997); <u>Marrero, et al. V. Vázquez, et al.</u>, 135 D.P.R. 174 (1994).

En cuanto al emplazamiento por edictos se refiere, el mismo se utiliza cuando se da cualquiera de las siguientes circunstancias: i.) la persona a ser emplazada se encuentra fuera de Puerto Rico; ii.) dicha persona es un no domiciliado y se cumple con cualquiera de las instancias expuestas en la Regla 4.7 de las de Procedimiento Civil, ante[14]; iii.) cuando estando en Puerto Rico la persona no pudiere ser localizada después de realizadas las diligencias pertinentes; iv.) cuando se ocultare para no ser emplazada o v.) cuando la entidad a ser emplazada fuere una corporación extranjera sin agente residente. Regla 4.5 de las de Procedimiento Civil, ante. De cumplirse con

---

[14] Esto es, cuando un demandado es un no domiciliado los tribunales de Puerto Rico tendrán jurisdicción sobre éste si cumple con cualquiera de los supuestos especificados en la Regla 4.7 de las de Procedimiento Civil, ante. Dicho de otro modo, nuestros tribunales tendrán jurisdicción si se cumple con la doctrina de los contactos mínimos. Este tipo de estatuto se conoce comúnmente como de largo alcance ("long-arm statutes"). Éstos fueron desarrollados de acuerdo a la jurisprudencia del Tribunal Supremo de los Estados Unidos interpretativa del debido proceso de ley. Véase: <u>World-Wide Volkswagen v. Woodson</u>, 444 U.S. 286 (1980); <u>Shuler v. Shuler</u>, ante. La Regla 4.7 de las de Procedimiento Civil, ante, dispone para el emplazamiento por edictos en este tipo de situación.

alguno de estos supuestos el tribunal podrá hacer efectiva su jurisdicción *in personam,* únicamente mediante un emplazamiento por edictos bien diligenciado que cumpla con las Reglas de Procedimiento Civil.[15]

Entre las formalidades que exige la Regla 4.5 de las de Procedimiento Civil, ante, sobre emplazamiento por edictos está la referente a la orden que dictará el tribunal. A esos efectos establece, en lo aquí pertinente, que:

> La orden dispondrá que la publicación se haga una sola vez en un periódico de circulación diaria general de la Isla de Puerto Rico. La orden dispondrá, además, que dentro de los diez (10) días siguientes a la publicación del edicto se le dirija al demandado una copia del emplazamiento y de la demanda presentada, por correo certificado con acuse de recibo o cualquier otra forma de servicio de entrega de correspondencia con acuse de recibo siempre y cuando dicha entidad no posea vínculo alguno con la parte demandante y no tenga interés en el pleito, al lugar de su última residencia conocida, a no ser que se justifique por declaración jurada que a pesar de los esfuerzos realizados, con expresión de éstos, no ha sido posible localizar residencia alguna conocida del demandado, en cuyo caso el tribunal excusará el cumplimiento de esta disposición. 32 L.P.R.A. Ap. III, R. 4.5.

Cabe señalar, además, que el emplazamiento por edictos debe ser diligenciado dentro de los seis (6) meses de haber sido expedido. Ello en virtud de las disposiciones de la Regla 4.3 (b) de las de Procedimiento Civil, ante, y su

---

[15] Es preciso aclarar que en el caso de demandados ausentes de Puerto Rico, el demandante podrá sustituir la notificación por edictos con la entrega personal al demandado, de copias de la demanda y del emplazamiento. En este tipo de caso el diligenciamiento se hará a tenor con lo dispuesto en la Regla 4.3 de las de Procedimiento Civil, ante. Véase: Regla 4.5 de las de Procedimiento Civil, ante.

jurisprudencia interpretativa. Véase: First Bank of P.R. v. Inmob. Nac. Inc., 144 D.P.R. 901, 917 (1998); Acosta v. A.B.C., Inc., 142 D.P.R. 927 (1997); Núñez González v. Jiménez Miranda, 122 D.P.R. 134 (1988). A manera de resumen, entre los requisitos más importantes del emplazamiento por edictos se encuentran: (i) la declaración jurada inicial donde se disponen las diligencias efectuadas para localizar a la persona a ser emplazada; (ii) que se le envíe al demandado por correo certificado, a su última dirección conocida, dentro de los diez (10) días luego de expedida la orden para que se emplace por edictos, copia de la demanda y del emplazamiento y (iii) el diligenciamiento del emplazamiento dentro de los seis (6) meses luego de ser expedido. Véase: Reglas 4.3, 4.5 y 4.7 de las de Procedimiento Civil, ante. Véase, además: First Bank of P.R. v. Inmob. Nac., Inc., ante; Monell v. Mun. De Carolina, 146 D.P.R. 20, 25 (1998).

Sobre el tema del cumplimiento estricto con los requisitos del emplazamiento por edictos, en Márquez Resto v. Barreto, ante, concluimos que el foro primario no adquirió jurisdicción sobre la persona de la demandada en cuanto a una de las causas de acción incoadas en su contra, en específico la de separación de bienes. Ello en vista de que la Regla 4.5 de las de Procedimiento Civil, ante, exige que en el edicto se haga constar, entre otras cosas, la naturaleza del pleito. En el referido caso no se cumplió con este requisito ya que sólo se dispuso que el pleito era

uno sobre divorcio, cuando en realidad era un pleito con dos causas de acción, una de divorcio y otra de división de bienes. En este caso reiteramos la importancia de que el emplazamiento por edictos se publique y se envíe copia del mismo, así como de la demanda, a la última dirección conocida de la persona. En cuanto a este extremo expresamos que:

> El hecho de que se le enviara a la señora Márquez Resto, a su última dirección conocida, por correo certificado con acuse de recibo, una copia del emplazamiento y la demanda, no subsana esta omisión.
>
> Es la combinación de ambos requisitos, la publicación del edicto con toda la información requerida y el envío de la copia del emplazamiento y la demanda a la última dirección conocida por la parte demandada, lo que hace que este mecanismo de emplazamiento mediante edicto tenga una probabilidad razonable de notificar a la parte demandada sobre las acciones entabladas en su contra, permitiéndole así poder hacer una decisión informada sobre si comparece o no a defenderse. Márquez Resto v. Barreto, ante, a la pág. 147-48.

En Reyes Martínez v. Oriental Fed. Savs. Bank, ante, concluimos que el presentar una declaración jurada o una certificación suficiente que compruebe las diligencias efectuadas para emplazar personalmente al demandado, previo a solicitar un emplazamiento por edictos, es parte integral del procedimiento para emplazar vía edictos. Por esa razón decretamos que la omisión de presentar documentos que comprueben lo antes dispuesto inciden de manera fatal sobre la jurisdicción sobre la persona del demandado, aun cuando se haya otorgado erróneamente la autorización para emplazar. En dicho caso nuevamente reiteramos la norma de

la   obligación   de   cumplir   estrictamente   con   los
procedimientos para emplazar por edictos.

Por otro lado, en Ortiz v. Crescent Trading Co., 69
D.P.R. 501 (1948), este Tribunal concluyó que el foro
primario no adquirió jurisdicción sobre la persona del
demandado ya que en la orden para emplazar por edictos no
se dispuso que al tiempo de hacerse la primera publicación
del edicto se le dirigiera a los demandados copia del
emplazamiento y de la demanda. Ello aun cuando a los
demandados se les había enviado copia del emplazamiento y
de la demanda.[16]

---

[16] Las diferentes jurisdicciones norteamericanas han adoptado
un enfoque similar al nuestro al exigir el cumplimiento
estricto de los estatutos referentes al emplazamiento por
edictos. A esos efectos, la doctrina puede ser resumida de
la siguiente forma:

> The procedure prescribed by a statute or rule for
> substituted or constructive service must be
> strictly pursued. There must be strict compliance
> with the requirements of statutes authorizing
> substituted or constructive service….
> Where, by local law, substituted or constructive
> service is in certain situations authorized in
> the place of personal service when the latter is
> inconvenient or impossible, a strict and literal
> compliance with the provisions of the law must be
> shown in order to support the judgment based on
> such substituted or constructive service.
> Jurisdiction is not to be assumed and exercised
> on the general ground that the subject matter of
> the suit is within the power of the court. The
> inquiry must be as to whether the requisites of
> the statute have been complied with, and such
> compliance must appear on the record. The fact
> that the defendant had actual knowledge of
> attempted service does not render the service
> effectual if in fact the process was not served
> in accordance with the requirements of the
> statute. Moreover, where the judge states the
> terms and conditions for substituted service,
> they must be followed. Since a long-arm statute

Forzosa resulta la conclusión, en consecuencia, que para que una persona sea considerada "parte" para fines de notificarle un escrito de apelación, <u>es necesario que sobre dicha persona se haya adquirido jurisdicción</u>. Ello, como hemos visto, ocurre mediante un emplazamiento bien diligenciado.[17] A esos efectos, en <u>Acosta v. A.B.C., Inc.</u>, ante, a la pág. 931, expresamos:

> Procesalmente, el concepto *parte* está inexorablemente atado al de *jurisdicción sobre la persona* (el demandante -actor o promovente original- que se somete voluntariamente al presentar la acción y el demandado que es notificado mediante emplazamiento). Su citación o emplazamiento representa el paso inagural del debido proceso de ley que viabiliza el ejercicio de la jurisdicción judicial. *Reyes Reyes v. Oriental Fed. Savs. Bank*, 133 D.P.R. 15 (1993); *Pagán v. Rivera Burgos,* 113 D.P.R. 750, 754 (1983). Por tal razón, consistentemente hemos resuelto que la falta de diligenciamiento del emplazamiento (personal o por edictos) priva al tribunal de jurisdicción sobre la persona e invalida cualquier sentencia en su contra. No es hasta que se diligencia el emplazamiento y se adquiere jurisdicción, que la persona puede ser considerada propiamente *parte*, aunque haya sido *nombrada* en el epígrafe de la demanda, hasta ese momento sólo es *parte nominal*.

_____

<u>provides an extraordinary method for securing jurisdiction, clear and complete compliance with its provisions is required</u>. 62B Am Jur 2d, sec. 151, págs. 859-60.

De igual forma, el Tribunal Supremo Español ha establecido que los requisitos de emplazamiento, ya sea personal o por edictos, son imprescindibles para la validez y firmeza de la resolución que en su día se emita. Véase: Leyes Procesales Civiles, 2da. Edición, Aranzandi, Pamplona, 1997, págs. 168-69.

[17] <u>Murphy Bros. Inc. v. Michetti Pipe Stringing, Inc.</u>, 143 L.E. 2d 448 (1999); <u>Acosta v. A.B.C., Inc.,</u> ante.

II

Con este trasfondo doctrinal en mente, analizamos los hechos ante nos. Como señaláramos anteriormente, la co-demandada Medina Garay figuró en el acápite de la demanda original instada el 23 de junio de 1992 por los aquí recurridos. A fines de poder ejercer su jurisdicción sobre dicha co-demandada y luego de evaluar la declaración jurada radicada por los demandantes-recurridos, el tribunal de instancia ordenó que Noemí Medina Garay fuera emplazada por edictos.

Ahora bien, la referida orden fue emitida el 29 de julio de 1992 y notificada al abogado de los demandantes-recurridos el 6 de agosto de 1992. Ello no obstante, el emplazamiento fue publicado casi dos (2) años después de la mencionada orden. Esto es, el emplazamiento por edictos se publicó en el periódico el Vocero el 13 de julio de 1994. No hay prueba en el expediente de que se haya solicitado prórroga para diligenciar este emplazamiento. Es más, la misma parte demandante-recurrida acepta que se publicó el emplazamiento tardíamente y en violación a la Regla 4.3 (b) de las de Procedimiento Civil, ante, en cuanto ésta dispone un término de seis (6) meses para diligenciar el emplazamiento. Véase: First Bank of P.R. v. Inmob. Nac. Inc., ante; Acosta v. A.B.C., Inc., ante; Núñez González v. Jiménez Miranda, ante.

Es de advertir, además, que lo anterior no es el único incumplimiento en el diligenciamiento del emplazamiento

aquí en cuestión. Como señaláramos anteriormente, la orden del tribunal de instancia autorizando el emplazamiento por edictos contenía la disposición requerida por ley a los efectos de que, diez (10) días luego de la publicación del edicto, debía enviársele a la parte demandada copia del emplazamiento y de la demanda a su última dirección conocida, ello mediante correo certificado. En el caso de autos la parte demandante tampoco cumplió con esta disposición. No fue sino hasta el 13 de noviembre de 1996, es decir más de dos (2) años después de publicado el emplazamiento y más de cuatro (4) años de haber sido expedida la orden, que la parte demandante-recurrida envío copia de la demanda y el emplazamiento por correo certificado a la alegada "última dirección conocida" de la co-demandada Noemí Medina Garay.

Debemos destacar que los demandantes-recurridos solicitaron que se le anotara la rebeldía a esta co-demandada, ello el 24 de febrero de 1997. Sin embargo, el tribunal de instancia no anotó la rebeldía de esta demandada ni dictó sentencia en rebeldía. Ello no obstante el foro primario sí anotó la rebeldía de otros co-demandados. Evidentemente, la denegatoria de anotar la rebeldía de la co-demandada Noemí Medina Garay se debió a las irregularidades en el diligenciamiento del emplazamiento aquí en cuestión.

En vista de los crasos incumplimientos en el diligenciamiento del emplazamiento de la co-demandada Noemí

Medina Garay, necesariamente tenemos que concluir que el foro primario no adquirió jurisdicción sobre su persona y, en consecuencia, ésta no era parte en el pleito. Por tal razón, la referida co-demandada no tenía que ser notificada del recurso de apelación aquí en cuestión. Estamos impedidos de avalar las actuaciones de la parte demandante-recurrida, a saber: incumplir inexcusablemente con varios requisitos de cumplimiento estricto en el diligenciamiento de un emplazamiento por edicto; no permitir de esta forma que se adquiriera jurisdicción sobre la co-demandada Noemí Medina Garay; y, entonces, alegar que ésta era una "parte" en el pleito que debía ser notificada del escrito de apelación. Lo contrario sería desviarnos de la norma antes esbozada a los efectos de que para que una persona sea considerada "parte" el tribunal de instancia debe de adquirir jurisdicción *in personam* sobre ésta. Debido a las faltas en el diligenciamiento del emplazamiento aquí en cuestión, ello no ocurrió.


III

Por los fundamentos antes esbozados se revoca la resolución dictada por el entonces Tribunal de Circuito de Apelaciones, Circuito Regional VI Caguas, Humacao y Guayama, desestimatoria la misma del recurso incoado por la parte aquí peticionaria El Conquistador, devolviéndose el

caso al referido foro para procedimientos ulteriores consistentes con lo aquí resuelto.[18]

Se dictará Sentencia de conformidad.


                                        FRANCISCO REBOLLO LÓPEZ
                                            Juez Asociado

---

[18] En vista de que nuestro derecho es uno rogado, nos hemos limitado a resolver la controversia planteada ante nos; esto es, si la co-demandada Noemí Medina Garay era o no "parte" en el pleito ante el tribunal de instancia para fines de notificarle el escrito de apelación incoado por El Conquistador ante el Tribunal de Apelaciones. Véase: S.L.G. v. Srio. de Justicia, res. el 26 de septiembre de 2000, 2000 TSPR 138; Fed. Pesc. Playa Picúas v. U.S. Inds., Inc., 135 D.P.R. 303 (1994).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Tomás Medina Garay y
Rogelio Medina Garay

    Demandantes-recurridos

       vs.                 CC-2002-655    CERTIORARI

Gladys Luz Medina Garay, Et Als.

    Demandados-peticionarios


SENTENCIA

San Juan, Puerto Rico a 19 de mayo de 2004


      Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se dicta Sentencia revocatoria de la resolución dictada en el presente caso por el entonces Tribunal de Circuito de Apelaciones. En consecuencia, se devuelve el caso a dicho foro para procedimientos ulteriores consistentes con lo aquí resuelto.

      Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri disiente sin opinión escrita. La Juez Presidenta señora Naveira Merly y el Juez Asociado señor Rivera Pérez no intervinieron.


                  Patricia Otón Olivieri
              Secretaria del Tribunal Supremo